UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

---

| | |
|---|---|
| SHIVA STEIN, | : |
| | : |
| Plaintiff, | : Civil Action No. _____ |
| | : |
| v. | : **COMPLAINT FOR VIOLATIONS OF** |
| | : **SECTIONS 14(a) AND 20(a) OF THE** |
| MID-CON ENERGY PARTNERS, LP, | : **SECURITIES EXCHANGE ACT OF** |
| TRAVIS GOFF, BOB BOULWARE, FRED | : **1934** |
| REYNOLDS, and CAPERTON WHITE, | : |
| | : **JURY TRIAL DEMANDED** |
| Defendants. | : |

---

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against Mid-Con Energy Partners, LP ("Mid-Con" or the "Partnership") and the members of Mid-Con's board of directors (the "Board" or the "Individual Defendants" and collectively with the Partnership, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed merger between Mid-Con and Contango Oil & Gas Company and its affiliates ("Contango").

2. Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Registration Statement on Form S-4 (the "Registration Statement") to be filed on November 20, 2020 with the United States Securities and Exchange Commission ("SEC") and disseminated to the Partnership's unitholders. The

Registration Statement was filed in connection with a proposed transaction whereby Michael Merger Sub LLC, a Delaware limited liability company and a wholly-owned, direct subsidiary of Contango ("Merger Sub"), will merge with Mid-Con, with Merger Sub surviving as a wholly owned subsidiary of Contango (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement"), each Mid-Con unitholder will receive 1.7500 Contango shares (the "Merger Consideration").

3. As discussed below, the Registration Statement contains materially incomplete and misleading representations and information, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Registration Statement contains materially incomplete and misleading information concerning the analyses performed by the Partnership's Conflicts Committee's financial advisor, Petrie Partners Securities, LLC ("Petrie Partners"), in support of its fairness opinion.

4. It is imperative that the material information that has been omitted from the Registration Statement is disclosed to the Partnership's unitholders.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Mid-Con' unitholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Mid-Con was formed in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of Mid-Con common units and has held such units since prior to the wrongs complained of herein.

10. Individual Defendant Travis Goff ("Goff") has been a member of the Board since June 2020. Goff owns approximately 28% of the outstanding shares of Common Stock of Contango.

11. Individual Defendant Bob Boulware has served as a member of the Board since June 2020 and serves on the Conflicts Committee.

12. Individual Defendant Fred Reynolds has served as a member of the Board since June 2020 and serves on the Conflicts Committee.

13. Individual Defendant Caperton White has served as a member of the Board since June 2020 and serves on the Conflicts Committee.

14. Defendant Mid-Con a Delaware limited partnership and maintains its principal offices at 2431 E. 61st Street, Suite 800, Tulsa, Oklahoma. The Partnership's common units trade on the NASDAQ Stock Exchange under the symbol "MCEP."

15. The defendants identified in paragraphs 10-13 are collectively referred to as the "Individual Defendants" or the "Board."

16. The defendants identified in paragraphs 10-14 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A.   The Proposed Transaction**

17. Mid-Con acquires, owns, develops, and produces oil and natural gas properties in North America. The Partnership's properties are primarily located in the Mid-Continent, Big Horn, and Powder River Basin regions of the United States in Oklahoma and Wyoming areas. As of December 31, 2019, its total estimated proved reserves were 25.6 million barrel of oil equivalent (MMBoe). Mid-Con Energy GP, LLC serves as the general partner of Mid-Con Energy Partners, LP. The Partnership was founded in 2011 and is headquartered in Tulsa, Oklahoma.

18. On October 26, 2020, the Partnership and Contango jointly announced the Proposed Transaction:

> FORT WORTH, Texas and TULSA, Okla., Oct. 26, 2020 (GLOBE NEWSWIRE) -- Contango Oil & Gas Company ("Contango") (NYSE American: MCF) and Mid-Con Energy Partners, LP ("Mid-Con") (NASDAQ: MCEP) today announced they have entered into an agreement to combine in an all-stock merger transaction. The combination continues Contango's consolidation strategy, increases its exposure to oil reserves at an attractive price, increases corporate margins via scale and further cost rationalization, and amplifies Contango's ability to play offense amid the dislocation in the sector, while providing Mid-Con's unitholders with greater liquidity, financial stability and opportunities for growth on a larger platform.
>
> **HIGHLIGHTS**
>
> - Acquisition of PDP heavy reserves by Contango at an attractive unlevered return
> - Accretive to Contango's reserve base
> - Mid-Con's assets oil weighted with low production decline profile, complementing Contango's higher production and cash flow profile
> - Leverages Contango's familiarity with Mid-Con's assets and operations via Mid-Con's Management Services Agreement

4

- Offers Mid-Con's unitholders enhanced liquidity, financial stability and opportunities for growth through a larger platform

- Further cost rationalization expected to be realized via consolidation of the entities

- Immediate free cash flow accretion$^{(1)}$

- Enhanced liquidity for the combined entity

- Maintains strong balance sheet and low leverage profile of Contango

- Maintains simple capital structure comprised of bank debt and common equity

- Adds PUD inventory with low CAPEX requirement with opportunity for near term conversion to PDP

**TRANSACTION DETAILS**

Under the terms of the merger agreement, Mid-Con unitholders will receive 1.75 shares of Contango common stock for each Mid-Con common unit owned, representing a 5 percent premium based on a 15-day volume weighted average price. This exchange ratio implies an enterprise value for the combined entity in excess of $400 million based on Friday's closing price. Upon completion of the merger and closing of the concurrently announced private placement of Contango common stock, Contango shareholders will own approximately 87 percent of the combined company and Mid-Con unitholders will own approximately 13 percent of the combined company on a fully diluted basis.

The transaction, which is expected to close in late 2020 or early 2021, has been unanimously approved by the conflicts committee of the board of directors of Mid-Con and by the full board of directors of Mid-Con, and by the disinterested directors of the board of directors of Contango. Voting agreements have been signed by over 50% of holders on both sides of the transaction, including Goff Capital. The closing is subject to customary shareholder and unitholder approvals and other customary conditions to closing. Contango's senior management team will run the combined company, and Contango's board of directors will remain intact. The combined company will be headquartered in Fort Worth, TX but will continue to maintain a presence in both the Houston and Oklahoma markets.

**MANAGEMENT COMMENTARY**

Wilkie Colyer, Contango's Chief Executive Officer stated, "This merger is exactly the type of transaction we look for to enhance value for our shareholders in the current market. We were able to substantially increase our reserve base and cash flow in an accretive transaction while meeting the needs of Mid-Con unitholders by further rationalizing their cost structure and mitigating their refinancing risk by combining our respective credit facilities. In that sense, this is truly a win for both parties involved in the merger. We of course have great familiarity with the Mid-Con assets having a Management Services Agreement with them and having brought on many of their employees, which has meaningfully enhanced Contango's expertise. This transaction is simply the next step, and certainly not our last, in our stated goal of consolidating a sector that is in dire need of it. This combination increases our exposure to long lived oil reserves and is accretive to Contango shareholders. Our definition of accretive, by the way, is that it increases the intrinsic value of Contango on a per share basis, and this transaction certainly fits that bill. It also benefits Mid-Con's unitholders by offering them enhanced liquidity, financial stability and opportunities for growth on a larger platform. We welcome Mid-Con lenders, unitholders, and employees into the Contango family."

Bob Boulware, the chairman of Mid-Con's board of directors and its conflicts committee of independent, disinterested directors, stated "This merger was negotiated by our conflicts committee, which determined, with the advice of its financial and legal advisors, that the consideration offered in the merger is fair, from a financial point of view, to Mid-Con's unaffiliated public unitholders. We are pleased to be able to provide our unitholders with the opportunity to transition at an attractive exchange ratio to ownership of shares in a larger, better capitalized company that is well positioned for future growth."

**BORROWING BASE**

Contango has received commitments from its and Mid-Con's lenders that, effective upon the closing of the merger with Mid-Con, Contango's borrowing base on its revolving credit facility will be increased from $75 million to $130 million, with the next regular redetermination scheduled for May 1, 2021.

**FINANCIAL AND OPERATIONAL UPDATE**

Contango ended the third quarter with $66 million of debt

> outstanding on its $75 million borrowing base credit facility and approximately $8 million of liquidity. Contango's sales volumes for the third quarter are in the range of 16,500 – 17,000 Boe/d, which is at the high end of the original 14,000 – 17,000 Boe/d guidance. Realized pricing for the third quarter, without the benefit of hedges, was in the range of $18.85 – 19.15 per Boe. Lastly, we incurred approximately $1.5 million of capital expenditures during the quarter.
>
> **ADVISORS**
>
> Intrepid Partners, LLC is serving as financial advisor and Gibson, Dunn & Crutcher LLP is serving as legal advisor to Contango. Petrie Partners, LLC is serving as financial advisor and Pillsbury Winthrop Shaw Pittman, LLP is serving as legal advisor to Mid-Con.

* * *

19. The Board has unanimously agreed to the Proposed Transaction. It is therefore imperative that Mid-Con' unitholders are provided with the material information that has been omitted from the Registration Statement.

**B.    The Materially Incomplete and Misleading Registration Statement**

20. On November 23, 2020, Mid-Con and Contango jointly filed the Registration Statement with the SEC in connection with the Proposed Transaction. The Individual Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Partnership's unitholders to ensure that it did not contain any material misrepresentations or omissions. However, the Registration Statement misrepresents and/or omits material information regarding the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

21. The Registration Statement fails to provide material information concerning financial projections by management and relied upon by Petrie Partners in its analyses. The Registration Statement discloses management-prepared financial projections for the Partnership

which are materially misleading.  The Registration Statement indicates that in connection with the rendering of its fairness opinion, the management of Mid-Con and Contango prepared certain non-public financial forecasts (the "Contango Management Projections for Contango," "Contango Management Projections For Mid-Con," and "Contango Management and Mid-Con Projections for Expected Synergies and Cost Savings" and together, the "Projections") and provided them to the Board and Petrie Partners with forming a view about the stand-alone and pro forma valuations. Accordingly, the Registration Statement should have, but fails to provide, certain information in the projections that managements provided to the Board and its financial advisor. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig*., 924 A.2d 171, 201-203 (Del. Ch. 2007).

22. For the Projections, the Registration Statement provides values for the non-GAAP (Generally Accepted Accounting Principles) financial metrics for fiscal years 2021 through 2022: EBITDAX and Levered Free Cash Flow, but fails to provide all line items used to calculate these metrics or a reconciliation of these non-GAAP metrics to their most comparable GAAP measures in direct violation of Regulation G and consequently Section 14(a).

23. When a company discloses non-GAAP financial measures in a registration statement that were relied on by a board of directors, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or

released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

24. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.

25. Thus, to cure the Registration Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Registration Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Registration Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses*

26. With respect to Petrie Partners' *Discounted Cash Flow Analysis* for Mid-Con, the Registration Statement fails to disclose: (i) the four price case scenario representing long-term potential future benchmark prices per barrel of oil and per million British thermal units of natural gas; (ii) the adjustments made to these prices to reflect location and quality differentials; (iii) the inputs and assumptions underlying the discount rates ranging from 10% to 25%; (iv) the value of future estimated general and administrative expenses, commodity derivatives, cash taxes, other assets and liabilities and estimated long-term debt and estimated net working capital as of June 30, 2020; and (v) the number of fully diluted units of Mid-Con and fully diluted shares of Contango.

27. With respect to Petrie Partners' *Comparable Transaction Analysis*, the Registration Statement fails to disclose the individual multiples and financial metrics for the transactions observed by Petrie Partners in the analysis.

28. With respect to Petrie Partners' *Capital Market Comparison Analysis*, the Registration Statement fails to disclose the individual multiples and financial metrics for the companies observed by Petrie Partners in the analysis.

29. With respect to Petrie Partners' *Going Concern Analysis*, the Registration Statement fails to disclose: (i) for Mid-Con, the inputs and assumptions underlying the calculation of the terminal EBITDA multiples of 3.5x, 4.5x, and 5.5x applied to estimated 2022 EBITDA; (ii) for Contango, the inputs and assumptions underlying the calculation of the terminal EBITDA multiples of 4.0x, 5.0x, and 6.0x applied to estimated 2022 EBITDA; (iii) for Mid-Con, the inputs and assumptions underlying the calculation of the discount rates ranging from 12.5% to 17.5%; (iv) for Contango, the inputs and assumptions underlying the calculation of the discount rates ranging from 10% to 15%; and (v) for both Mid-Con and Contango, the value of each company's long-term debt and cash as of June 30, 2020.

30. In sum, the omission of the above-referenced information renders statements in the Registration Statement materially incomplete and misleading in contravention of the Exchange Act.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

31. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

32. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with unitholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

33. Each of the Defendants reviewed and authorized the dissemination of the Registration Statement and the use of their name in the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Partnership and relied upon by the Board in approving the Proposed Transaction.

34. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to unitholders although they could have done so without extraordinary effort.

35. Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement. The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately

11

involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

36. The misrepresentations and omissions in the Registration Statement are material to Plaintiff. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## **COUNT II**

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

37. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

38. The Individual Defendants acted as controlling persons of Mid-Con within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Mid-Con, and participation in and/or awareness of the Partnership's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Mid-Con, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

39. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

40. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Mid-Con, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Individual Defendants were directly involved in the making of the Registration Statement.

41. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

42. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

43. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

44. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Registration Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: November 25, 2020

**RIGRODSKY & LONG, P.A.**

By: */s/ Gina M. Serra*
Seth D. Rigrodsky (#3147)
Brian D. Long (#4347)
Gina M. Serra (#5387)
300 Delaware Avenue, Suite 210
Wilmington, DE 19801
Telephone: (302) 295-5310
Facsimile: (302) 654-7530
Email: sdr@rl-legal.com
Email: bdl@rl-legal.com
Email: gms@rl-legal.com

**OF COUNSEL:**

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
Gloria Kui Melwani
270 Madison Avenue
New York, NY 10016
Telephone: (212) 545-4600
Facsimile: (212) 686-0114
Email: melwani@whafh.com

*Attorneys for Plaintiff*